Pro Se 4 (Rev. 12/16) Complaint for a Civil Case Alleging Breach of Contract

# UNITED STATES DISTRICT COURT
## for the
## Central District of California
## Western Division



FILED
CLERK, U.S. DISTRICT COURT
9/30/24
CENTRAL DISTRICT OF CALIFORNIA
BY: MRV  DEPUTY

K. Lavender, in pro se
_____
Plaintiff(s)
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Huntington Hospital e   John Doe 1 through 20
_____
Defendant(s)
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Case No. 2:24-cv-08386-ODW(JPRx)
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)*  ☒ Yes  ☐ No

## COMPLAINT FOR A CIVIL CASE ALLEGING BREACH OF CONTRACT
### (28 U.S.C. § 1332; Diversity of Citizenship)

**I. The Parties to This Complaint**

**A. The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | K. Lavender |
| Street Address | 1822 East Route 66 |
| City and County | Glendora, California |
| State and Zip Code | 91740 |
| Telephone Number | 424-324-8503 |
| E-mail Address | |

Pro Se 4 (Rev. 12/16) Complaint for a Civil Case Alleging Breach of Contract

**B.   The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1
- Name: Huntington Hospital, John Doe 1-20
- Job or Title *(if known)*: Case Management Department
- Street Address: 100 West California Blvd.
- City and County: Pasadena, Los Angeles County
- State and Zip Code: California, 9105
- Telephone Number: 1-626-397-5000
- E-mail Address *(if known)*:

Defendant No. 2
- Name:
- Job or Title *(if known)*:
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address *(if known)*:

Defendant No. 3
- Name:
- Job or Title *(if known)*:
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address *(if known)*:

Defendant No. 4
- Name:
- Job or Title *(if known)*:
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:

Pro Se 4 (Rev. 12/16) Complaint for a Civil Case Alleging Breach of Contract

E-mail Address *(if known)* _____

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Under 28 U.S.C. § 1332, federal courts may hear cases in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000. In that kind of case, called a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff. Explain how these jurisdictional requirements have been met.

### A. The Plaintiff(s)

1. If the plaintiff is an individual
   The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

2. If the plaintiff is a corporation
   The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,
   and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

### B. The Defendant(s)

1. If the defendant is an individual
   The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

2. If the defendant is a corporation
   The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.
   Or is incorporated under the laws of *(foreign nation)* _____,
   and has its principal place of business in *(name)* _____.

Pro Se 15 (Rev. 12/16) Complaint f **Civil for Alleged Breech of contract**

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

## III. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. Where did the events giving rise to your claim(s) occur?

At Huntington Hospital in Pasadena on February 27, 2023 Ms. Lavender (the plaintiff) accepted a contracted position for three months:
The defendants are accountable (1) Retaliation in Violation of Labor Code Section 1102.5; (2) Wrongful Termination in Violation of Public Policy; (3) Failure to Provide Meal Periods; (4) Failure to Pay Minimum Wage; (5) Failure to Provide Rest Breaks; (6) Failure to Issue Accurate and Itemized Wage Statements; and (7) Failure to Pay Wages Due Upon Termination; Waiting Time Penalties

B. What date and approximate time did the events giving rise to your claim(s) occur?

page 4 of 10 A

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

## C. The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

$201,196

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

The plaintiff, *(name)* K.Lavender, and the defendant, *(name)* Huntington Hospital, made an agreement or contract on *(date)* 02/02/2023. The agreement or contract was *(oral or written)* written. Under that agreement or contract, the parties were required to *(specify what the agreement or contract required each party to do)* allow Ms. Lavender to work for three months.

The defendant failed to comply because *(specify what the defendant did or failed to do that failed to comply with what the agreement or contract required)*

After the Plaintiff has been applying directly with Huntington hospital since 1997-2024, for various jobs as a perminate employee until present times, the plantiff manged to receive a contract work as an case manager in the Emergency Room. The plaintiff begin working at Huntington Hospital as a contractor as a RN case manager on was responsible for seeing clients in the emergency room, attending meetings, uploading and screening calls, providing staff mail, emails, collaborating with all medical ancillary staff, verifying insurance, and answering the phone receiving more than calls a day calling all patients back, responding to their request for various needs, and checking in the computer inputing data communications in a system called Interqual for all patient admissions including the calls triaging them to various employees. The plaintiff was making 8 hours at $77.50, 4 hours at $116.25 (Average $90.42/hr for 12 hours per hour. The last worked for the defendant was on March 15, 2024, a The plantiff was wrongfully terminated on on March 15, 2024 for reporting patient safety issues in documentation, which the defendants attempted to make her falsify documentation that she seen patients from a third party to have patients admitted and prioritized over other patients that needed similar types of care. When Ms. Lavender brought these concerns to upper management, she was terminated. She also was denied equal opportunity to apply with Huntington Hospital for what HR claimed was computer errors, and refused to give her a paper application upon her request to apply for various positions she qualified for. Thes actions are discriminative practices and unethical conduct..

Pro Se 15 (Rev. 12/16) Complaint *civil alleging Breach of contract*

During her employment, Defendant failed to compensate Ms. Lavender for the 30 minutes per shift of off-the-clock work Ms. Lavender performed after her 12 hour shifts. As such, Defendant is liable to Ms. Lavender for Ms. Lavender's overtime rate of pay for these. unrecorded hours. Additionally, Defendant is liable for non-compliant wage statements for failing to record all of the hours Ms. Lavender worked at Defendant and waiting time penalties for failing to provide these wages upon termination.

Throughout his employment, Ms. Lavender was unable to take her meal and rest breaks due to Defendant's heavy workload and insufficient coverage. Ms. Lavender was unable to take her legally mandated meal break 5 days per week and rest breaks for 4 days per week. Moreover, Ms. Lavender was not compensated wage premiums for his missed respite periods. As such Defendant failed to accurately record Ms. Lavender's accrued hours and wages and is therefore liable for wage premiums, non-compliant wage statements, and waiting time penalties.

As detailed below, Deendant is clearly liable to Ms. Lavender for the following violations of California law.Liability for Retaliation in Violation of Labor Code § 1102.5 Labor Code §1102.5 prohibits retaliation by an employer against an employee for disclosing any information to any person with authority to investigate, or any public body investigating, violation of a state or federal statute or regulation if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute. or a violation of or noncompliance with a local, state, or federal rule or regulation. In order to establish a prima facie case of retaliation under § 1102.5(b), plaintiff must demonstrate that he or she engaged in a protected activity as set forth in § 1102.5, that the employer subjected him or her to an adverse employment action, and a causal link between the two. (McVeigh v. Recology San Francisco (2013) 213 Cal.App.4th443,468). A Plaintiff who successfully prosecutes for retaliation in violation of § 1102.5 may recover compensatory damages, including economic and emotional distress damages. (Gardenhire v. Housing Authority of the City of Los Angeles (2000) 85 Cal.App.4th 236,237, 240-241). Retaliation in Violation of California's Paid Sick Leave Law Labor Code §246 requires employers to provide paid sick leave to employees who have worked in California for the same employer for 30 or more days within a year of commencement of employment. Labor Code §246.5 provides that an employee may use sick days for the "diagnosis, care, or treatment of an existing health condition of, or preventive care for, an employee or an employee's family member." The employer cannot require the employee to search for or find a replacement worker to cover the days during which the employee uses sick days and cannot retaliate or in any way discriminate against an employee for using accrued sick days or attempting to use accrued sick days (Labor Code §246.5(b)and (c)). As long as the employee has accrued sick leave available, the employer cannot count sick leave taken as an absence that may lead to discipline such as under a company attendance policy (Labor Code §234). Discrimination in Violation of FEHA California Government Code §12940(a) (the Fair Employment and Housing Act, or "FEHA") provides that it is unlawful employment practice "[f]or an employer because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person...to discriminate against the person in compensation or in terms, conditions, or privileges of employment." California uses a three-stage test, established in McDonnell Douglas Corp. v. Green (1973) 411 U.S. 792. to resolve discrimination cases. Once the employee establishes a prima facie case of discrimination using the three-stage test, a presumption of discrimination is established, shifting the burden to the employer to show that the action was motivated by legitimate. non discriminatory reasons. If the employer meets this burden, the burden shifts to the employee to show that the employer's reasons are pretext for discrimination or to produce evidence of intentional discrimination. Guz v. Bechtel (2000) 24 Cal.4th 317,354-356.

Pro Se 15 (Rev. 12/16) Complaint Civil *alleging Breach of contract*

### IV. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Liability for Retaliation in Violation of Labor Code § 1102.5
Labor Code §1102.5 prohibits retaliation by an employer against an employee for disclosing any information to any person with authority to investigate, or any public body investigating, violation of a state or federal statute or regulation if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.
In order to establish a prima facie case of retaliation under § 1102.5(b), plaintiff must demonstrate that he or she engaged in a protected activity as set forth in § 1102.5, that the employer subjected him or her to an adverse employment action, and a causal link between the two. (McVeigh v. Recology San Francisco (2013) 213 Cal.App.4th443,468).
A Plaintiff who successfully prosecutes for retaliation in violation of § 1102.5 may recover compensatory damages, including economic and emotional distress damages. (Gardenhire v. Housing Authority of the City of Los Angeles (2000) 85 Cal.App.4th 236.237, 240-241).
Wrongful Termination in Violation of Public Policy
"[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 170 "[T]he cases in which violations of public policy are found generally fall into four categories: (1) refusing to violate a statute; (2) performing a statutory obligation (3) exercising a statutory right or privilege; and (4) reporting an alleged violation of a statute of public importance." Gantt v. Sentry Insurance (1992) 1 Cal.4th 1083, 1090-1091. Similarly, "an employer's authority over its employee does not include the right to demand that the employee commit a criminal act to further its interests, and an employer may not coerce compliance with such unlawful directions by discharging an employee who refuses to follow such an order . . ." Tameny, supra, 27 Cal.3d at p. 178.

### V. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Damages for wrongful termination in violation of California public policy are
calculated based on the following:

Damages for wrongful termination in violation of California public policy are calculated based on the following:
- Front pay: present cash value of any future wages and benefits that the employee would have earned for the length of time the employment would have been reasonably certain to continue,
- Back pay: what employee would have earned up to today, including any benefits and pay increases, and
- Emotional distress damages.

A) Meal Period Violations
In Brinker Restaurant Corp. v. Superior Court (2012) 53 Cal.4th 1004, the California Supreme Court held that a California employer must ensure that its employees are actually free of job duties and must provide the opportunity for employees to take a full, uninterrupted off-duty meal period. The Court was unequivocal in specifying that an employer only "satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." A discernable piece of evidence must be shown to prove an employer did not impair or impede an employee's meal period. Additionally, if the employee works over ten (10) hours she is entitled to a second timely uninterrupted meal period, subject to the same penalties.
In describing and defining "impede or discourage," the Brinker Court recommended that employers adopt formal policies and practices to ensure scheduled meal periods and not use common scheduling that makes it difficult for employees to take breaks but rather to have overlapping schedules where one employee covers for others and to not write up, reprimand or ridicule employees that took breaks when it was their break times. There remain several cases proving meal period violations based on employers' practice to implicitly or explicitly coerce employees not to take their meal periods. Cicairos v. Summit Logistics, Inc. (2005) 133 Cal.App.4th 949; Jaimez v. DAIOHS USA Inc. (2010) 181 Cal.App.4th 1286; and Dilts v. Penske Logistics, LLC, 267 F.R.D. 625, 638 (S.D.Cal.2010). Thus, a meal period violation will occur if the employer does not ensure an employee is free from their job duties.
For each instance where Defendant denied our client the opportunity to take a proper meal period, Plaintiff is owed one additional hour of pay as a premium wage penalty.

B) Failure to Pay Minimum Wage
Labor Code § 1197 requires that all employees be paid at least the minimum wage set by applicable state or local law. Labor Code § 1197.1 provides, "1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid. This amount shall be in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed. This amount shall be in addition to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section shall be paid to the affected employee."
Labor Code § 1194.2 provides that in an action "to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully paid and interest thereon."
For every pay period that the total paid by Defendant in wages and/or commissions is not equal to or greater than the applicable minimum wage, Plaintiff is owed not only the unpaid wages but

also liquidated damages in an amount equal to the unpaid wages.

C) Rest Break Violations

Labor Code §226.7 requires that an employer must provide its employees with a ten-minute duty-free rest break commencing in the middle of a four-hour shift. Labor Code §§ 226.7, IWC Wage Order. Failure to authorize or permit employees to take ten-minute rest breaks similarly triggers another obligation to pay one-hour's pay to that employee.

Section 12 of the Industrial Welfare Commission Wage Orders requires that:

"(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages. (B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided."

A rest period is designated as a full ten-minute rest break. The IWC has provided that the rest period is net - in other words, the rest period begins when the employee reaches an area away from the work station that is appropriate for rest. The employee is entitled to one rest period per work period. This means than an employer may not (except in the case of certain workers in extended care homes under Order 5) count periods of less than 10 minutes as rest periods meeting the requirements of Section 12 of the IWC Orders. (Opinion Letter February 22, 2002; and Opinion letter of January 3, 1986).

D) Noncompliant Wage Statements

California Labor Code § 226(a) requires that employers, when paying their non-exempt employees' wages, include an "itemized statement in writing showing" the "total hours worked by the employee," and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate."

California wage orders require that every employer must keep accurate records for each non-exempt employee for at least two years identifying: (1) when he/she begins and ends work each period; (2) when he/she takes a meal period, unless all work at the location ceases; (3) his/her total daily hours worked; and (4) the total hours he/she worked in the payroll period and all applicable rates of pay.

Defendant failed to maintain an itemized wage statement that accurately reports total hours worked, which includes Plaintiff's work off-the-clock during lunch and before and after clock-in and out. Defendant failed to accurately account for all overtime hours worked and instead inaccurately recorded them or did not record them at all.

Violation of Labor Code § 226 entitles Plaintiff to an award of penalties amounting to $50 for the initial violation and $100 for each subsequent pay period that Defendant failed to provide accurate records, not to exceed $4,000.

E) Waiting Time Penalties for Unpaid Wages

Labor Code §201 provides, "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

In Smith v. L'Oreal USA, Inc. (2006) 39 Cal.4th 77, the California Supreme Court emphasized the importance of paying California employees promptly, as follows:

"Delay of payment or loss of wages results in deprivation of the necessities of life, suffering inability to meet just obligations to others, and, in many cases may make the wage-earner a charge upon the public.' (Citation.) California has long regarded the timely payment of employee wage claims as indispensable to the public welfare: It has long been recognized that wages are

not ordinary debts, that they may be preferred over other claims, and that, because of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay when it is due." (Citations.)

Failing to immediately pay an employee's wages upon termination is an expensive violation. If upon termination the employer does not immediately pay an employee what he or she is owed, Labor Code §203 imposes upon the employer a severe penalty. Labor Code §203 provides: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201..., any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

The word "willful" does not require proof of a "deliberate evil purpose" on the part of the employer. Barnhill v. Robert Saunders & Co. (1981) 125 Cal.App.3d 1. "Willful" merely means the employer intentionally failed or refused to perform an act which was required to be done." Id. at 7. Once a court determines wages are late, penalties are imposed without much regard for an employer's argument its failure to pay was not willful.

Punitive Damages

California Civil Code §3294 provides, in part, "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." "Punitive damages are to be assessed in an amount which, depending upon the defendant's financial worth and other factors, will deter him and others from committing similar misdeeds." College Hospital, Inc. v. Superior Court (1994) 8 Cal.4th 704, 712.

For corporate punitive damages liability, §3294(b) requires that the wrongful act giving rise to the exemplary damages be committed by an "officer, director, or managing agent." White v. Ultramar, Inc. (1999) 21 Cal.4th 563, 572. Importantly, "malice does not require actual intent to harm." Angie M v. Sup. Ct. (1995) 37 Cal.App.4th 1217, 1228.

Even "[n]onintentional conduct comes within the definition of malicious acts punishable by the assessment of punitive damages when a party intentionally performs an act from which he knows, or should know, it is highly probable that harm will result." Ford Motor Co. v. Homes Ins. Co. (1981) 116 Cal.App.3d 374,381; Angie M, 37 Cal.App.4th at 1228.

California Attorney's Fees Provisions

In a wage and hour employment law claim, specifically for claims brought under Labor Code §226, §203 and §2802, Plaintiffs are entitled to mandatory attorneys' fees. In whistleblower actions, prevailing plaintiffs are also entitled to attorneys' fees. As such, please note that my hourly rate for this employment-related action has been court approved at $650 per hour.

An estimation of Defendant's full liability is calculated below.

Damages

Wrongful Termination

$116,480.00 = Lost wages (front and back pay)
$10,000 = Civil penalty pursuant to Labor Code § 1102.5
$50,000.00 = Emotional distress damages

Missed Meal Periods

$2,520.00 = (45 missed meal periods) x ($56 per hour for eight hours)

Failure to Pay Minimum Wage/Unpaid Overtime

$1,890.00 = (22.5 hours) x ($84 OT Rate)

Missed Rest Breaks

$2,016.00 = (36 missed rest breaks) x ($56 per hour)

Noncompliant Wage Statements

$850.00 = ($50 for first violation) + ($100 penalty x 8 additional pay periods)

Labor Code § 203 Waiting Time Penalties

7

$13,440.00 = ($448 per day) x (30 days max penalty)
Attorney fees/costs
$10,000.00
Punitive Damages, to be determined.
TOTAL: $207,196.00

Conclusion

At this stage of the case, and in the interest of trying to resolve prior to costly and timely litigation, Ms. Lavender has authorized our office to propose that both parties participate in a meaningful half day mediation. The mediators I work with have a ninety percent (90%) success rate in settling these types of cases, as well as saving both parties a tremendous amount of resources that would otherwise be wasted on litigation. I am quite certain that it would be more cost-effective for Defendant to settle its liability before trial preparation and depositions commence. In fact, incurring more defense costs may be much more of an incentive to talk settlement now rather than later.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 8/26/2024

Signature of Plaintiff
Printed Name of Plaintiff    K.Lavender

### B. For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number

8

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

Name of Law Firm
Address

_____
City                State        Zip Code

Telephone Number
E-mail Address